Are the parties ready to proceed? Yes, your honor. Bill Pesnell on behalf of the plaintiff, we are ready to proceed. Good morning, your honors. May it please the court, it's Steve Oxenhandler on behalf of Louisiana College and we're ready to proceed also. Thank you. You may proceed. May it please the court, my name is Bill Pesnell. I'm with the Pesnell Law Firm and we are counsel for Dr. Joe Aguillard, the plaintiff in this proceeding. The case is before the court on an appeal by Dr. Aguillard from a series of partial summary judgments rendered by the district court, resulting in a dismissal of plaintiff's claims or suits. This court reviews the summary judgments de novo, applying the same standards as the district court, but without any deference to the district court. The issues are the same here as they were in the district court. Are there genuine issues of material fact that preclude summary judgment in favor of Louisiana College and is Louisiana College entitled to judgment as a matter of law? We submit that the answers to those questions is that there are material issues of fact which preclude summary judgment and that Louisiana College is not entitled to judgment as a matter of law. This appeal presents three principal issues for the court to decide. First, did the trial court erroneously grant Louisiana College's motion for partial summary judgment dismissing with prejudice plaintiff's retaliatory hostile work environment claims? Second, does the trial court err in granting Louisiana College's motion for partial summary judgment dismissing with prejudice plaintiff's retaliation claim based upon the defamation suit filed by Louisiana College against the plaintiff? And third, did the trial court err in granting partial summary judgment in favor of Louisiana College dismissing plaintiff's state law claims for the intentional infliction of emotional distress on the grounds of prescription? We believe that the central fallacy of Louisiana College's position on this appeal is that it, like the district court, did not consider the totality of the circumstances in evaluating plaintiff's retaliatory hostile work environment claims and plaintiff's claims for retaliation with respect to Louisiana College's defamation suit and plaintiff's state law claims for the intentional infliction of emotional distress. Whether an environment is hostile or abusive can only be determined by looking at all of the circumstances. Let me start by placing, giving the court some personal information about Dr. Aguilar. Dr. Aguilar and his wife have long been associated with Louisiana College. They both graduated from Louisiana College and were voted distinguished alumni in 2006. However, Dr. Aguilar became president of Louisiana College in 2005 and he remained as president of Louisiana College until July of 2014. At that time, or prior to that time, Dr. Aguilar had been diagnosed with PTSD and coronary artery disease and on the recommendation of his attending physicians, he had resigned as president of Louisiana College. Louisiana College recognized that Dr. Aguilar was a valuable resource and so they entered into a written employment agreement with Dr. Aguilar in mid-2014 whereby Dr. Aguilar became a tenured member of the faculty and president emeritus of Louisiana College. The period of antagonism in this case began on or about May the 3rd of 2015 when Dr. Aguilar filed a workplace safety complaint about the employment of Kyle Johnson. Kyle Johnson was a former student at Louisiana College and he had threatened Dr. Aguilar's life. The threat was serious. The Louisiana State Police were notified and took precautionary measures and Mr. Johnson was subsequently expelled from Louisiana College. This brings into play about this time that Dr. Richard K. Brewer became president of Louisiana College in March of 2015 and Dr. Brewer set up a conference with Dr. Aguilar on May 20th of 2015 to discuss his workplace safety violation complaint. However, prior to that conference, Dr. Brewer met with Ingrid Johnson who was counselor for Louisiana College to get information and guidance on how to break Dr. Aguilar's contract. At the meeting, Dr. Brewer told Dr. Aguilar that you can't be president emeritus. It's just not going to work. The ink was hardly dry on the contract signed by the board of trustees. He also told Dr. Aguilar to never ever contact any of his vice presidents again and not to contact any donors of Louisiana College. Dr. Brewer refused to discuss any reasonable accommodation which Dr. Aguilar by his notice had requested and Dr. Aguilar left that meeting in tears. Dr. Brewer gave him, showed him the door and gave him a Kleenex. Kyle Johnson surfaced again in August of 2015. This time on the cover of a Louisiana College recruiting brochure that was distributed nationally and posted all over the Louisiana College campus. It was a constant reminder of Dr. Aguilar's experience with Kyle Johnson. Then on September the 28th of 2015, Dr. Aguilar met with a Donald Conner who purported to be a law enforcement officer and a private investigator but who was a total stranger to Dr. Aguilar. Dr. Aguilar kind of told Dr. Aguilar that he had been office. Dr. Aguilar called Dr. Brewer to confirm the representation and Dr. Brewer told him that Conner did speak for him and to do what Conner told him to do. Conner proceeded to demand that Dr. Aguilar resign his position at Louisiana College and threatened to ruin Dr. Aguilar and his family if he didn't. Conner appeared to be armed or Dr. Aguilar thought he was and he blocked Dr. Aguilar from leaving the room on more than one occasion. I appreciate your recitation of the facts but we have about we have three legal issues that we need to get to and I'm not even sure which one of these issues you're addressing. You talked about the retaliatory hostile work environment claim. Is that what this is going to connect to? Yes, your honor. This is actually these facts are related to both the retaliatory work environment claim, the dismissal, I mean the filing of retaliation claim based on the defamation suit and the intentional infliction of emotional distress. The fact all the facts are relevant to these causes of action. All right, clock's ticking. Go right ahead. All right. Dr. Aguilar was frightened and had difficulty breathing and he had to take some of his nitro pills at that when he was meeting with Dr. Conner. Dr. Aguilar told Conner he couldn't make a decision then that he needed to talk to his family and with that Conner allowed Dr. Aguilar to leave and return to his vehicle. Conner followed Aguilar to his vehicle and when they got there he demanded that Aguilar surrender his computers which were on the back seat. When Dr. Aguilar did not agree to that, Conner physically took the computers over his objection and left. Uh Aguilar was thoroughly frightened by this incident and he had voluntarily uh urinated in his pants and he drove to the Rapides Parish hospital where he waited outside for his blood pressure to subside. The next day Dr. Aguilar emailed Dr. Brewer on two occasions demanding the return of his computers and Dr. Brewer did not reply. Conner took the computers to Baton Rouge with him and had the computers hacked by technorias. The computers were then returned to Louisiana College which further hacked the computers. The computers contained private and confidential information and data including drafts of the EEOC and whistleblower complaints on behalf of Dr. Carolyn D Spears, Dr. Michael Shamblin, Dr. Kimberly Sharp who was the head of the Department of Nursing and the Smidleys based on the national origin discrimination and Dr. Comasha Smith-Ross. By letter dated October the 7th, 2015, Council for Dr. Aguilar requested a meeting with Dr. Brewer to discuss Dr. Aguilar's disabilities and possible accommodation. Aguilar and his council never received any reply from Brewer. As a result of his September encounter with Conner and Brewer, Aguilar spent three weeks in the trauma center in New Orleans in November of 2015. On December the 2nd of 2015, Dr. Brewer and Janice Clark, Dr. Janice Clark met with Dr. Smith-Ross who was Dr. Aguilar's supervisor. They attempted to get her to teach teaching responsibilities at Louisiana College. Dr. Smith-Ross refused to do that. During the meeting, Dr. Brewer informed Dr. Smith-Ross that he was having Dr. Aguilar follow and Brewer of course expected her to tell Dr. Aguilar that and she did. Clark, at the direction of Brewer, then wrote Dr. Aguilar a letter dated January 22nd, 2016 advising him that his employment agreement did not have a term and that he could be terminated at any time for any reason. Now this was false. First, it overlooked the fact that Dr. Aguilar was a tenured faculty member. Second, Louisiana College records showed that its board of trustees had agreed to a restriction on a 10 million dollar anonymous donation that Aguilar would remain president emeritus of Louisiana College for at least five years. This January 22nd letter offered Aguilar an opportunity for a hearing before a faculty affairs advisory committee. Dr. Aguilar accepted that offer reserving all rights of arbitration under his employment contract and a hearing was held was scheduled for February 23rd, 2016 before the FAAC. However, before that hearing occurred, two significant events occurred both under the direction and control of Dr. Brewer. First, on January 29th, 2016, Brewer suspended Aguilar from all teaching responsibilities and placed him on administrative leave. This was clearly an adverse employment action and despite the fact that there was no suggestion that Dr. Aguilar had failed in his teaching responsibilities, you can imagine the embarrassment and humiliation to Dr. Aguilar and having to face his colleagues on the faculty and his answer his students who were not notified that he had been replaced. Secondly, Dr. Aguilar was locked out of his office on February the 17th, 2016. Dr. Brewer had the locks changed to the Lynn Alumni House where Dr. Aguilar's office was located as well as the locks to his office. This was done without any advance notice or warning to Dr. Aguilar and without providing him any keys. The shock and the humiliation of being locked out of his own office caused Dr. Aguilar to immediately experience severe chest pain and difficulty breathing so he made an appointment to go see his cardiologist immediately and locking Dr. Aguilar out of his office, Brewer converted all of Dr. Aguilar's personal property located in his office including his family heirlooms and his teaching manuscripts and his confidential health record. That severely impaired Dr. Aguilar's ability to perform or prepare for the FAAC hearing on February the 23rd which is just so late. Your time has expired. Thank you. I'm sorry your honor. Good morning your honors again this is Steve Oxenhandler on behalf of Louisiana College. It sounds like Mr. Aguilar just basically read the allegations in his complaint but didn't actually deal or speak to the law. I'll deal first with the the alleged retaliatory hostile work environment claim. There was never a retaliatory hostile work environment claim ever asserted. Not in the complaint, not in the first amendment complaint and not in the EEOC filings. There was no site to the record where this claim existed. There was no motion for summary judgment sought on this non-alleged claim and no judgment ever dismissed this non-alleged claim. The first time it was brought up was in a motion for reconsideration on LC's IED claim which had prescribed. And if you notice except for a few changes the argument in Mr. Aguilar's brief at pages 15 to the top of page 20 are a cut and paste of basically what he put in his motion for reconsideration. And Judge King and Judge Graves you took part in a decision in 2014 in U.S. Bank National Association versus Verizon 761 Federal 3rd 409 page 425 which had a different subject matter but held the following that the court will not consider an issue or a new argument raised for the first time in a motion for reconsideration. And that's exactly what happened here. The retaliatory hostile work environment claim never existed and this court should not being brought up on appeal. I'd like to talk now about the second issue raised by Mr. Aguilar and that's the dismissal of the defamation retaliation. And please if you have questions please feel free to ask. Louisiana College brought up the defamation action to protect its reputation. It's standing in the community. It's standing with current and it's standing with filed on May 25th of 2017. Mr. Aguilar's alleged whistleblower complaint was filed on February 9th 2016 15.5 months before the defamation petition. The first EEOC charge was filed on May 1st 2016 almost a 14 month gap and likewise the second EEOC complaint by Mr. Aguilar was filed on July 8th 2016 a 10.5 month gap. As you know Fifth Circuit precedent basically says that you can have a three or four month maybe time period that there's temporal proximity here. It's long past that but more importantly there was no ability of Mr. and Mr. Aguilar failed as the district court noted in a very detailed decision to prove in a retaliation suit but for those complaints that else he would not have filed that petition. And if I'm not going to review the entire defamation petition but I'm sure you all did already and you'll see that there were allegations to Sachs and Mr. Aguilar admits in his in his complaint that he he he used he complained to Sachs. Yes your honor. No there's no question. Oh I thought there was a question I'm sorry. There's somebody with a microphone that's on that has some background noise going on that's what I think we're picking up. I'm not sure who that is but you may proceed. Thank you your honor. He could not prove but for uh retaliation. The the Sachs complaint um by Mr. Aguilar was over 300 pages and contained very defamatory untrue statements about Dr. Aguilar I mean Dr. Brewer, Dr. Clark and if one of the things they complained that the LC engaged in in in misconduct by fixing nurses grades and failing to teach courses. LC is a local college here that basically recruits from Louisiana, Mississippi, Texas and a head of right to to uh to file the defamation claim. In his um in Mr. Aguilar's uh appeal he cites a case called Petway versus American Cast Iron Pipe Company that he said stood for the proposition that an employee could not be discharged for filing an EEOC complaint complaining malicious material. That's not what happened here and there was no evidence to show that but what Mr. Aguilar failed to do was to read the rest of the Petway very important language and I'll read it to you here and it's on page uh 411 federal second at 107 foot note two. We in no way imply that an employer is preempted by section 704 704a from vindicating his reputation through a resort to a civil action for malicious defamation. Aguilar failed to mention the fifth circuit's specific language that another court uh Barticula versus Bacoldo 411 federal sub 392 foot note three Petway explicitly stated that title seven did not prevent the employer from maintaining a defamation action and that's what happened here. There's absolutely uh no no evidence that it was based on any retaliation against Mr. Aguilar. All of uh Mr. Aguilar's um defense statements to the contrary are basically defenses um he and it's simply his complaints to sacks he he says complaints with the sacks were also protected by title seven. There's no decision stating that in the fifth circuit. I'll turn now to and we asked you to affirm both the we affirmed the defamation uh dismissal as the district court went into great detail which I don't have to do here because I is the intentional affliction of emotional distress and again I'm sure you all know that to succeed on a claim of i.e.d the contact has to be so outrageous in character and so extreme a degree as to go beyond the bounds of all possible decency. Mr. Aguilar claims that the defamation petition is i.e.d if that were the case no one would file in a defamation action because it it would it would clearly chill those types of things and filing a defamation action is something that people are entitled to do and prove their case in the court of law but the judge went into great detail of of why the i.e.d decision was dismissed and it's based on prescription. Every single one of Mr. Aguilar's recitations not only here today which Mr. Aguilar read but in the complaint and as we pointed out in great detail in our briefs occurred more than 20 months before he filed suit. Mr. Aguilar was dismissed on March 31st of 2016. He didn't file suit until May until December 27, 2017. All of these actions were dismissed. There's no continuing tort. This is these are these are distinct actions as was recited as was described today by Mr. Aguilar. Mr. Pesnell speaking for Mr. Aguilar. Are there any questions? Thank you, counsel. Thank you. Roboto. You need to turn your mic on, Mr. Pesnell. All right. Did I get it? Yes, sir. I'm technologically challenged, your honor. You're doing fine. Let me first point out that there's no requirement for us to show temporal proximity with respect to the defamation suit. Temporal proximity has to do with causation and there are other ways of showing causation than temporal proximity. In this particular case, the defamation suit on his face showed that it was based in large part on allegations that were made before the EEOC. This court has recognized that an employer doesn't have a right to second guess an employee in terms of filing the complaints with the EEOC. They're so there's no question. But even if that temporal proximity was required, it's here. The reason being that Louisiana College tactically delayed filing its petition for defamation until after the auditing agency had completed its investigation and closed its file. SACS expressly requested Louisiana College to respond to the complaints that were made in before SACS and Louisiana College did, showing that those complaints were made in good faith. This lawsuit was filed by Louisiana College. It's a bad faith lawsuit. There's not anything to sustain that filing. Louisiana College has cited not one single case in opposition to the cases we cited involving the filing of a lawsuit based upon EEOC allegations. Considering the infliction of emotional distress, the district judge cut that off on March the 31st, which is the date on which Dr. Aguilar was purportedly terminated. That lawsuit was filed about two months after SACS had completed its investigation. And Louisiana College tactically delayed filing this defamation suit so it could get past the SACS response. Louisiana College was not terminated nor was placed on probation as a result of the complaints that Dr. Aguilar had made with SACS. But within two months was temporal proximity for the defamation suit under the circumstances present here. Secondly, the court ignored the fact that and then his heirlooms and his intellectual property, some of which has been returned, but not all of it. There's no prescription on a suit to recover property. That's a real action that is imprescriptible. The district court never got to that or considered that. There are problems with the district court's finding. The district court found on a stalking claim that Dr. Brewer had denied or said he was not aware that the officer was equipped with a pistol. Well, the reason he wasn't aware of it, he wasn't there, so he had no personal knowledge of the fact. And so we've got a number of continuing acts. This defamation suit continues to pin and harass Dr. Aguilar. So we think that the court failed to take into account all of the facts and circumstances that are relevant to that decision. And we submit that the court should reverse the district court and remand this case for trial on a marriage. Thank you. Thank you, counsel. Thanks to both of you. The court will take this under advisement, and we are adjourned.